IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>CONLY M. HOBSON, *et. al*,<br><br>                Defendants. | Case No. 07-CV-282-EJL<br><br>REPORT AND RECOMMENDATION |

**REPORT**

Currently pending before the Court are Plaintiff's Motion for Discovery Sanctions under Federal Rule of Civil Procedure 37 (Docket No. 66); Plaintiff's Motion for Summary Judgment on the Issue of Liability (Docket No. 67); and Plaintiff's Motion for Summary Judgment on the Issue of Response Costs (Docket No. 70). Having reviewed the briefing submitted by the parties as well as the record,[1] the Court recommends that Plaintiff's motions for summary judgment (Docket Nos. 67, 70) be GRANTED and that Plaintiff's motion for sanctions (Docket No. 66) be deemed Moot.

**I.
Background**

On June 26, 2007, Plaintiff, the United States of America, filed a Complaint against Defendants Conly M. Hobson, D. George Hobson, David G. Hobson, Jeffry M. Hobson, and Norman C. Hobson, personally and in their capacities as trustees for the Hobson Children's Trust

---

[1] Pursuant to Dist. Idaho Loc. Civ. R. 7.1, the Court finds this motion suitable for disposition without oral argument.

REPORT AND RECOMMENDATION - 1

and the Hobson Children's Trust ("Defendants"). The Complaint also was filed in rem against property located at 406 Main Street in Caldwell, Idaho. The lawsuit was filed pursuant to Section 107 of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. §9607. (Complaint, Docket No. 1.)

Defendants own the property located at 406 Main Street in Caldwell, Idaho. (Deed of Gift, Docket No. 68-1.) A laundromat and dry cleaning facility known as Franke's Laundromat (the "Site") operated on the property from the early 1960s until it closed in March 2000. (Weigel Decl. ¶ 7, Docket No. 69; EPA Action Memo Docket No. 68-2.) Defendants performed a "limited environmental assessment" of the Site in April 1999 and discovered perchloroethylene ("PCE") contamination in the groundwater. (EPA Action Memo, Docket No. 68-2.) In March 2000, the City of Caldwell performed a "limited phase II site assessment" and discovered PCE in the groundwater at higher levels.(EPA Action Memo, Docket No. 68-2.)

On June 21, 2000, Defendants notified the Idaho Department of Environmental Quality ("IDEQ") of the contamination by letter. (EPA Action Memo, Docket No. 68-2.) Afterwards, IDEQ and the Defendants entered into consent order negotiations which were unsuccessful. (EPA Action Memo, Docket No. 68-2.) On April 11, 2001, IDEQ issued a unilateral Compliance Order.(EPA Action Memo, Docket No. 68-2.) In a letter dated December 11, 2002, IDEQ requested Defendants perform additional site investigation and interim remedial measures. (See Weigel Decl Exh. C., Docket No. 69-2.) In March of 2003, the Defendants responded by letter that they lacked the resources to conduct the additional work and IDEQ terminated the Compliance Order. (See Weigel Decl. Exh. D, Docket No. 69-3.)

REPORT AND RECOMMENDATION - 2

With very little work having been accomplished and the magnitude of the threat to the groundwater, EPA determined that it would be appropriate to initiate a time-critical removal action. (Weigel Decl. Exh. D, Docket No. 69-3.) On June 24, 2003, the EPA entered into an Administrative Order on Consent for Removal Action with the Hobson Children's Trust. (Weigel Decl. Exh E, Docket No. 69-4.) The Defendants performed the site investigation activities required by the Order throughout the summer of 2003 and submitted two reports to the EPA (Weigel Decl. ¶8, Docket No. 69). Based on these reports, EPA prepared an action memorandum effective November 25, 2003. (Weigel Decl. Exh. H, Docket No. 69-5.) The Action Memorandum found that the Site presented an imminent and substantial danger to public health and the environment. The EPA offered to negotiate a new Administrative Order on Consent where the Defendants would perform the removal action, but the Defendants declined. (Weigel Decl. Para. 8, Docket No. 69; *see also* Statement of Facts Exh. I, Docket No. 69-9.)

Pursuant to the Action Memorandum,[2] the EPA and its contractors performed soil and groundwater sampling and analysis, excavated and disposed of nearly 3,000 tons of PCE contaminated soil, restored the Site, and provided Site security between May and July 2004.[3] The Plaintiff has provided evidence that the total cost of clean up at the Site was $1,176,001.00. (See Norton Decl. Docket No. 68-3)  The Defendants have offered no evidence contradicting the facts set forth above and the substantial evidence provided by the Plaintiff in support of its motions.

---

[2] Changes in the cleanup standard were made to the original Action Memorandum in an Action Memorandum Amendment approved on May 24, 2004. (Weigel Decl. ¶ Docket No. 69.)

[3] Defendants denied the EPA access to the Site to perform clean up activities until a Court Order was issued on May 3, 2004.

REPORT AND RECOMMENDATION - 3

## II.
## Discussion

**A.     Legal Standard**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, which provides, in pertinent part, that judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A moving party must show that no genuine issue of material fact exists by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). It is not enough for the [non-moving] party to "rest on mere allegations or denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In determining whether a genuine issue of material fact exists, facts and inferences must be viewed most favorably to the non-moving party. To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir. 1981).

The Ninth Circuit has emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992). The Ninth Circuit has found that, to resist a motion for summary judgment,

> the non-moving party: (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371, 374 (9th Cir. 1989).

## B.    Defendants' Arguments

Prior to addressing the merits of Plaintiff's motions for summary judgment, the Court will address Defendants' more generalized objections to the motions and this lawsuit. Defendants repeatedly have objected to this lawsuit on the grounds that they do not consent to the Court's jurisdiction, Plaintiff has not provided any ratification of commencement, Plaintiff lacks standing, Defendants never entered into a contract with the government, and Defendants never ceded the property knows as Franke's Laundromat to the United States. As stated previously, the Court finds no merit in their arguments. However, the Court will briefly readdress each of Defendants' arguments below.

As the bulk of Defendants' argument, as well as their Memorandum in Support, relate to the Court's jurisdiction, the Court will re-address that issue. Contrary to Defendants' repeated assertions and requests for proof, this Court has subject matter jurisdiction over this case and

REPORT AND RECOMMENDATION - 5

personal jurisdiction over each of the Defendants. This Court's subject matter jurisdiction rests solidly upon several different bases. First, Article III, Section 2 of the Constitution specifically defines the jurisdiction of the federal courts as extending "to Controversies to which the United States shall be a party." 28 U.S.C. §1345 also provides that the district courts shall have jurisdiction, except as otherwise provided , in "all civil actions, suits or proceedings commenced by the United States, or by any agency or officer therefore expressly authorized to sue by Act of Congress." Further, this case involves the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), a federal law, making jurisdiction proper under 29 U.S.C. §1331 which states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Finally, and more specifically, the Court has jurisdiction pursuant to Section 113(b) of CERCLA which provides that:

> United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy. Venue shall lie in any district in which the release or damages occurred, or in which the defendant resides, may be found, or has his principle office.

42 U.S.C. §9613(b). Based on the foregoing, and as repeatedly held by the Court, the Court has subject matter jurisdiction over this action brought by the United States pursuant to CERCLA.[4]

The Defendants also contest the Court's personal jurisdiction over them by claiming that they did not consent to these proceedings. The Court has advised the Defendants several times that the issue of consent is irrelevant. However, the Court further notes that it does have

---

[4] Defendants argue that venue is improper, however, they present no specific argument or reason as to why venue is improper. The language of CERCLA as quoted above demonstrates that venue is proper in Idaho where the release occurred and where Defendants reside.

REPORT AND RECOMMENDATION - 6

personal jurisdiction over the Defendants based on the fact that Defendants reside in the state of Idaho and were served with Summons and Complaint in the State of Idaho. (See Affidavits of Service, Docket No. 4.)

Defendants continue to contest the United States' standing to sue in this action. As previously held by the Court, the real party in interest is the person or entity who, according to the substantive law, is entitled to the substantive right of relief. (See Report and Recommendation, Docket No. 58 *citing* 6A Wright & Miller, Federal Practice and Procedure 1543, 1444 (2d 3d. 2009); Order Adopting Report and Recommendation, Docket No. 60.) Thus, the party authorized to seek un-reimbursed costs under CERCLA is the real party in interest under Fed. R. Civ. P. 17. Here, power to pursue an action under CERCLA has been delegated by the President to the Attorney General of the United States. 42 U.S.C. §9615, Executive Order No. 12580, Fed. Reg. 2923, 2026 (Jan. 23, 1997). Therefore, this suit was brought properly at the request of the EPA by the Attorney General in the name of the United States of America.

Additionally, the Court previously has held that Defendants' request for ratification of commencement pursuant to Fed. R. Civ. P. 17(a)(3) is inapplicable where the real party in interest already is a party to the pending lawsuit. Here, where the United States is the real party in interest, ratification of commencement does not apply. (Report and Recommendation p.3, Docket No. 58; Order Adopting Report and Recommendation Docket No. 60.)

Defendants also argue the Court has no jurisdiction because the Defendants have not entered into a contract with the government or the EPA. This action was brought under CERCLA to recover response costs, not as a breach of contract action. Therefore, the issue of whether a contract existed is irrelevant to this lawsuit.

REPORT AND RECOMMENDATION - 7

Defendants argue that there is no evidence that the acts complained of occurred within federal jurisdiction, because there is no evidence that the property known as Franke's Laundromat was ceded to the United States. Section 104 of CERCLA provides the response authority to remove a hazardous substance when there is a release or substantial threat of release into the environment. Environment is further defined as "any...land surface or subsurface strata,... within the United States..." 42 U.S.C. §9601(8). Franke's Laundromat is in Caldwell, Idaho, and Idaho is "an inseparable part of the American Union..." IDAHO CONST. Art. I, § 3. Therefore the Site is within the United States and Defendants' argument is baseless.

Finally, the Court notes that Defendants continue to phrase their responses in terms of requests "proofs of claim" from both the Court and the Plaintiff. These are not valid requests. Defendants have had every opportunity to participate in this litigation and to propound discovery upon Plaintiff to gain information they feel they may have been lacking, but have not done so.

Therefore, the Court finds that Defendants' arguments in response to the motions for summary judgment lack merit. Further, the Court notes that Defendants have not submitted any evidence or argument addressing the merits of Plaintiff's motions for summary judgment. However, the Court will examine the merits of the motions to determine whether summary judgment is appropriate.

**C.     Motion for Summary Judgment on the issue of Defendants' Liability**

The Comprehensive Environmental Response Compensation and Liability Act (CERCLA) has two objectives: 1) to create an administrative program and a source of funds "Superfund" to implement government investigation and cleanup of hazardous waste sites and; 2) to force responsible parties to bear hazardous-waste cleanup costs.  To prove liability under

CERCLA, the government must establish that: 1) the waste disposal site is a facility within the meaning of §9601(9); 2) a release or threatened release of a hazardous substance from the facility occurred; 3) as a result of release or threatened release, the government has incurred response costs; 4) costs incurred conform to national contingency plan under §9607(a)(4)(A) as administered by Environmental Protection Agency ("EPA"); and 5) defendants are in one of the four categories of covered persons listed in §9607(a) as liable for the costs of remedial action. *Cose v. Getty Oil Co.*, 4 F.3d 700, 703-4 (9th Cir. 1993).[5]  The government need not show that a specific defendant's waste caused incurrence of the clean up costs.  *US v. Alcan Aluminum Corp.*, 990 F2d 711, 721 (2d Cir. 1993).

If the government establishes each of these elements on undisputed facts, and the defendant is unable to demonstrate by a preponderance of the evidence the existence of one of the three affirmative defenses set forth in §9607(b), the government is entitled to summary judgment on the issue of liability. *Id.*

Here, Plaintiff has established each of these elements on undisputed facts.  First, the Plaintiff has demonstrated that release of a hazardous substance[6] occurred at the Site, a facility with the meaning of CERCLA.  Facility is defined under CERCLA as "any building, structure,

---

[5] 42 U.S.C. §9607(a) provides in pertinent part:

(A) Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section -
(1) the owner and operator of a vessel or a facility, ... from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for -
    (a) all costs of removal or remedial action incurred by the United States Government not inconsistent with the national contingency plan.

[6] PCE is a hazardous substance as identified in 42 U.S.C. §9601(14) and 40 C.F.R. pt 302.4.

REPORT AND RECOMMENDATION - 9

installation, equipment, pipe or pipeline..., well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, ... or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. §9601(9). The definition of facility is to be interpreted broadly. Plaintiff has provided undisputed evidence that PCE was discovered on and contaminated the property located at 406 Main Street in Caldwell Idaho, making the Site a facility under CERCLA.

A release includes "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment..." 42 USC §9601(22). The Plaintiff has submitted evidence that PCE was found on the Site, with the highest concentration of PCE found closest to and under the northwest corner of the building that formerly housed a dry-cleaning facility.[7] (EPA Action Memo p.2, Docket No. 68-2.) High concentrations of PCE were found in the soil and the groundwater, decreasing with distance down gradient from the Site. These findings are consistent with a release of PCE from the facility. (EPA Action Memo p.2, Docket No. 68-2.)

The Plaintiff has provided undisputed evidence that, as a result of the release, the United States has incurred response costs not inconsistent with the national contingency plan ("NCP"). To prevail on summary judgment on the issue of liability, the United States need prove only that it has incurred some response costs as a result of the release or threatened release of hazardous substances at the site. *Amoco*, 889 F.2d at 672. The Plaintiff has submitted declarations demonstrating that it incurred response costs at the Site through investigation, travel, sampling, excavation, disposal, and enforcement. (Weigel Dec. ¶¶ 13-14, Docket No. 69; Decl. of Diana

---

[7] This location corresponds to the previous location of an above ground PCE tank located outside and adjacent to the northwest corner of the building. (Weigel Decl. ¶7, Docket No. 69.)

REPORT AND RECOMMENDATION - 10

Norton¶¶ 12-17, Docket No. 68-3.)  Plaintiff has demonstrated that these response costs were incurred as a direct result of the release.  *See Lousiana Pacific Corp. v. Beazer Materials & Serv*. 811 F. Supp 1421, 1430 (E.D. Cal. 1993) (finding the cause requirement is simply the existence of a nexus between contamination and response).

Response actions undertaken by a federal or state governmental entity or an Indian tribe are presumed to be consistent with the NCP.  *State of California v. Neville Chemical Co.*, 213 F.Supp. 2d.  1134, 1138 (C.D. Ca. 2002) *citing Washington State Detp. Of Transportation v. Washington Natural Gas Co.*, 59 F.3d 793, 799-800 (9th Cir. 1995).  It is the Defendants' burden to prove inconsistency with the NCP and, to do so, "a defendant must prove that the EPA's response action was arbitrary and capricious." *U.S. v. Chapman*, 146 F.3d 1166, 1171 (9th Cir. 1998) *citing Washington State Dept. Of Transp. v. Washington Natural Gas Co.*, 59 F.3d 793, 799-800 (9th Cir. 1995).  As Defendants have made no argument that the response costs were inconsistent with the NCP nor presented any evidence that they were arbitrary and capricious, there is no genuine issue of material fact relating to the consistency of the EPA actions with the NCP.

Finally, the Plaintiff has provided undisputed evidence that Defendants are covered persons under CERCLA.  CERCLA creates liability on the part of four classes of parties: (1) past and present owners of a facility where hazardous substances have been deposited, stored, disposed of, placed, or otherwise come to be located; (2) past and present operators of such a facility; (3) generators who arranged for disposal of hazardous substances and a facility; and (4) transporters of hazardous substances to a facility.  CERCLA imposes strict liability on persons in any of the four classes of liable parties.  *Long Beach Unified School Dist. v. Dorothy B. Goodwin*

*Calif. Living Trust*, 32 F.3d 1364, 1366 (9th Cir. 1994). The Plaintiff has provided evidence that Defendants' own the Site as equal tenants in common.[8] (Statement of Facts ¶¶6,7, Exh. 2, Docket No. 71.)

Therefore, under CERCLA, all elements have been satisfied demonstrating Defendants' liability for all response costs incurred by the United States in responding to the releases or threatened releases of hazardous substances at the Site.

**D.     Declaratory Judgment**

Plaintiff also asks this Court to issue a declaratory judgment that each Defendant is liable under CERCLA for all further costs incurred by the United States related to the Site. Section 113(g)(2) of CERCLA provides that, in any cost recovery action, the district court shall issue a declaratory judgment on liability for response costs or damages that will be binding in any subsequent action to recover any further response costs. 42 U.S.C. §9613(g)(2). This section "essentially...mandates collateral estoppel effect to a liability determination." *Foster v. United States*, 922 F.Supp. 663 (D.C. 1996). A declaratory judgment is warranted even if future costs are speculative. *Id. Citing Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir. 1994). Therefore, the Court finds that entry of a declaratory judgment holding Defendants liable

---

[8] Defendants received the property from their parents by Deed of Gift dated December 22, 1983 and filed with the Ada County Recorders Office on December 28, 1983. (Deed of Gift Exh. 2, Docket No. 71-1.) Thereafter, there is evidence that Defendants may have created trusts, through which each brother attempted to gift their property to a trust for the benefit of their children. However, each trust agreement provides that the trust expires after ten years and six months from the date and upon expiration each share reverts to the grantor. None of the agreements are dated or notarized. (Trust Documents Exh. 6, Docket No. 71-4.) However, tax returns submitted to IDEQ in 2003 represented that two of the trusts were created on December 22, 1983 and therefore would have expired in 1994 with the property reverting back to Defendants as equal tenants in common at that time. (Statement of Facts ¶ 7, Docket No. 68.)

REPORT AND RECOMMENDATION - 12

for all further costs incurred by the United States related to the Site is appropriate and recommends that the Court enter such an order.

**E.     *In rem* action**

Plaintiff also moves for summary judgment on the issue of *in rem* liability. CERCLA provides that "the costs and damages for which a person is liable to the United States under [Section 107(a) of CERCLA] shall constitute a lien in favor of the United States upon all real property and rights to such property - which (A) belong to such person; and (B) are subject to or affected by a removal or remedial action." 42 U.S.C. §9607(l)(1). CERCLA provides for an *in rem* action allowing the United States to recover the costs constituting the lien. 42 U.S.C. §9607(l)(4). To establish the liability of a property in an *in rem* action under Section 107(l), the United States must first establish the liability of the person under Section 107(a) and then establish liability of the property under Section 107(l). *See U.S. v. J.G.-24 Inc.*, 331 F.Supp.2d 14, 60 (D.Puerto Rico 2004). EPA recorded a Superfund lien on the property on November 5, 2004, and gave Defendants post perfection notification of the lien by letter dated November 18, 2004. (Notice of Federal Lien Exh. 7, Docket No. 68-5.)

Defendants have not responded to this issue; therefore, the Court recommends that summary judgment be entered on the *in rem* action against the property located at 406 Main Street Caldwell, Idaho. With respect to Plaintiff's request that the Court order the sale of the property, the Court finds insufficient information in the record to support such an order at this time.

**F.     Defenses**

As previously noted, to avoid liability after a prima facie case has been proven, the Defendants must establish by a preponderance of the evidence the existence of one of three affirmative defenses.[9] *See Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1316-17 (9th Cir. 1986). Defendants have provided no evidence that any of the defenses apply here, despite having been provided numerous opportunities to do so. Thus, Defendants have not created a genuine issue of material fact as to defenses that could apply and the Court finds that Summary Judgment on the issue of liability should be granted.

**G.    Costs**

---

[9] Section 107(b)(3) of CERCLA provides:

There shall be no liability under subsection (a) of this section for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were cause solely by -
    (1) an act of God;
    (2) an act of war;
    (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail), if the defendant establishes by a preponderance of the evidence that
        (a) he exercised due care with respect to the hazardous substance concerned, taking into consideration the characteristics of such hazardous substance, in light of all relevant facts and circumstances, and
        (b) he took precautions against foreseeable acts or omissions of any such third party and the consequences that could foreseeably result from such acts or omissions; or
    (4) any combination of the foregoing paragraphs.

42 U.S.C. §9607(b).

REPORT AND RECOMMENDATION - 14

Plaintiffs also have moved for summary judgment on the issue of costs. Once a party has been held liable under CERCLA, the United States is entitled to recover "all costs of removal or remedial action incurred by the United States Government...not inconsistent with the national contingency plan." 42 U.S.C. §9607(a)(A)(4). These costs are typically proven by means of: (1) summaries of the voluminous underlying cost documentation relating to various categories of response costs, such as personnel, indirect, travel and contract costs; and (2) affidavits describing the response actions for which those costs were incurred. *See United States v. Findett Corp.*, 220 F.3d 842, 849 (8th Cir. 2000); *United States v. Chapman*, 146 F.3d 1166, 1172 (9th Cir. 1998).

Plaintiff has presented substantial uncontradicted evidence that the EPA and the Environmental and Natural Resources Division of the United States Department of Justice ("DOJ") incurred response costs totaling $1,176,001.00 between January 31, 2005 and May 31, 2009, exclusive of prejudgment interest.[10] Defendants have raised no objection to Plaintiff's evidence as inaccurate or inadequate to demonstrate the amount of money owed.[11]

First, Plaintiff provided the Declaration of Diana Norton, the Superfund Accountant responsible for preparing and certifying the Certified Cost Recovery Project for the Site. Ms. Norton's testimony includes a detailed description of how she prepared and verified the accuracy of the cost summary. (Docket No. 68-3.) Further, her testimony includes a copy of the Certified Cost Recovery Package which includes detailed descriptions of the costs incurred and a total cost

---

[10] Plaintiff is entitled to prejudgment interest pursuant to 42 U.S.C. §9607(a)(4).

[11] Defendants do argue that the $11, 644.76 they paid to the EPA satisfied all debts with respect to the "contract"; however, Plaintiff points out that that money was for prior actions taken pursuant to the Administrative Consent Order - not the removal costs incurred as a result of the EPA's actions between May 2004 and July 2004. (Reply p. 5, Docket No. 75.)

REPORT AND RECOMMENDATION - 15

between October 1, 1980 until January 31, 2005 as $1,095,316.74.  (Norton Decl., Docket No. 68-3.)

The Declaration of William M. Kime, a Certified Public Accountant under contract with the DOJ to assist in the accumulation, processing, and reporting of information relating to costs incurred by the DOJ in the prosecution of cases under CERCLA, also is in the record.  His testimony includes detailed descriptions of how he compiled his cost summary for the DOJ, which includes costs such as direct labor, other direct costs, and related indirect charges incurred during the Site cleanup.   Mr. Kime's declaration demonstrates that the total costs incurred by the DOJ during that time totals $80,684.77. (Kime Decl. ¶¶1-2, Docket No. 68-6.)

Finally, Plaintiff filed the Declaration of Gregory D. Weigel, the on scene coordinator in the response unit of the office of environmental cleanup in the United States EPA Region 10, Seattle Washington.  Mr. Weigel's testimony includes detailed descriptions of the progress of the time-critical removal work performed by the EPA that resulted in the response costs itemized in the declarations of Ms. Norton and Mr. Kime. (Weigel Decl., Docket No. 69.)

As Plaintiff has presented undisputed evidence of recoverable, documented and verified costs incurred as a result of the removal work performed by the EPA, the  Court recommends that Summary Judgment also be entered on the issue of costs in the amount of $1,176,001.00 exclusive of prejudgment interest.

**H.    Motion for Sanctions**

Plaintiff also filed a Motion for Discovery Sanctions (Docket No. 66) based on Defendants' complete failure to meaningfully  participate in discovery throughout the course of

this litigation. Although the Court notes that the Motion has merit, it currently is moot as the Court recommends the motions for summary judgment be granted.

## RECOMMENDATION

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY RECOMMENDED that:**

1) Plaintiff's Motions for Summary Judgment on the Issue of Liability (Docket No. 67) and Response Costs (Docket No.70) be GRANTED;

2) Defendants be ordered to pay costs in the amount of $1,176,001.00 plus prejudgment interest;

3) That a declaratory judgment holding Defendants liable for all further costs incurred by the United States related to the Site be entered for the Plaintiff; and

4) That judgment *in rem* be entered against the real property located at 406 Main Street, Caldwell, Idaho.

DATED: December 1, 2009

Honorable Candy W. Dale
Chief United States Magistrate Judge